IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MARK DOUGLAS SCHLUETER,            )
                                   )
              Plaintiff,           )
                                   )
                                   )  Case No. CIV-19-145-JFH-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
              Defendant.           )

**REPORT AND RECOMMENDATION**

Plaintiff Mark Douglas Schlueter (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 60 years old at the time of the decision. He has a high school education and worked in the past as a stock clerk. Claimant alleges an inability to work beginning on June 30, 2017, due to limitations resulting from spine disorders, anxiety, and obsessive-compulsive disorders.

## Procedural History

On January 8, 2018, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 14, 2018, ALJ Michael Mannes, conducted an administrative hearing from McAlester, Oklahoma, at

which Claimant was present and participated. On December 3, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on March 8, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work with additional limitations.

### Errors Alleged for Review

Claimant asserts the ALJ's determination that he can perform medium work is legally flawed and unsupported by substantial evidence.

### RFC Assessment

In his decision, the ALJ found Claimant suffered from severe impairments of spine disorder, anxiety, and obsessive-compulsive disorder (Tr. 15). He determined Claimant could perform medium work, but with additional limitations. Claimant could occasionally climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, and crawl. Claimant could perform simple and some complex tasks and have

occasional interaction with co-workers and the general public. He could respond appropriately to changes in a routine work setting and time off task could be accommodated by normal work breaks. (Tr. 17).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could return to his past relevant work as a stock clerk. Alternatively, he determined Claimant could perform the representative jobs of industrial sweeper cleaner, hand packager, and cleaner II, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 21). As a result, the ALJ concluded Claimant was not under a disability from June 30, 2017, through the date of the decision. (Tr. 22).

Claimant contends the ALJ's RFC assessment that he can perform medium work with postural and mental limitations is legally and factually flawed and not supported by substantial evidence. He asserts the ALJ failed to fully consider the probative evidence of record and did not explain how the evidence supported his finding that Claimant could perform medium work.[2]

The ALJ noted Claimant's onset date for disability was June 30, 2017. With regard to the evidence related to his physical functional limitations, the ALJ discussed Claimant's neurosurgical consultation on May 11, 2016, with John Main, D.O., wherein Dr.

---

[2]   The Claimant does not challenge the mental limitations included by the ALJ in the RFC.

Main examined Claimant and reviewed an MRI of Claimant's lumbar spine from April of 2016. Claimant reported constant pain with intermittent intensity in his back with radiation down the right leg and into the hand. Physical activity exacerbated the pain. The pain had been ongoing over the prior months. Claimant also complained of chronic right-hand numbness and neck pain. His medication consisted of anti-inflammatories and muscle relaxers, but they did not provide Claimant with much relief. Dr. Main referenced the April 2016 MRI, noting it "showed diffuse degenerative lumbar spondylosis most markedly at L3-4, which show[ed] a significant amount of foraminal stenosis. There also appears to be degeneration at L4-5 and L5-S1." (Tr. 18, 259, 375). Dr. Main also indicated Claimant "may be suffering from radiculopathy," but noted treatment would be conservative with an epidural steroid injection and physical therapy. (Tr. 260).

The ALJ also discussed Claimant's chest X ray from March 28, 2017, noting there was no evidence of infiltration of the lung, pleural fluid, pneumothorax, or heart failure. Claimant's heart was a normal size. He had mild degenerative disc disease at the lower thoracic spine. There was no evidence of active disease. (Tr. 18, 415).

Claimant underwent a consultative physical examination with Dr. Christopher Sudduth, M.D., on March 9, 2018. He had normal gait and could squat and rise from that position with ease.

Claimant wore hearing aids bilaterally. His lungs revealed coarse breath sounds bilaterally. Claimant's tandem walking was normal, and he walked on his heels and toes with ease. He could stand but not hop on either foot bilaterally. Claimant had cervical spine and lumbar spine pain on range of motion assessment, but his range of motion was normal throughout. Claimant had a positive straight leg raise test bilaterally. The ALJ found Dr. Sudduth's examination "mostly persuasive," noting it was consistent with the longitudinal record, and there were no significant longitudinal records of treatment for back problems prior to Claimant's retirement. (Tr. 19, 442-49).

The ALJ discussed that Claimant was rated 100 percent disabled through Veterans Affairs ("VA"). Claimant was 50 percent disabled for sleep apnea syndromes, 50 percent for post-traumatic stress disorder, 30 percent for flat foot condition, 30 percent for irritable colon, 20 percent for limited range of motion in the arm, 10 percent for limited flexion of the knee, 10 percent for limited flexion of the forearm, 10 percent for tinnitus, 10 percent for paralysis of sciatic nerve, 10 percent for intervertebral disc syndrome, and 10 percent for degenerative arthritis of the spine. The ALJ found the VA disability ratings less persuasive because it used criteria different from the Social Security Administration. (Tr. 19, 529-30, 555).

The ALJ also considered the opinions of the state agency consultants in assessing Claimant's physical functional limitations for the RFC. In March of 2018, Sarah Yoakam, M.D., determined Claimant had an RFC to perform a full range of medium work. (Tr. 75-77). In June of 2018, J. Chris Carey, M.D., issued an identical opinion. (Tr. 90-92). Neither state agency consultant assessed Claimant with postural limitations. The ALJ found their opinions only partially persuasive, noting that because of Claimant's testimony of limitations with sitting and standing because of back pain, he had included postural limitations in the RFC. (Tr. 20).

The ALJ further considered Claimant's function reports and testimony at the administrative hearing. He summarized Claimant's description of his limitations in detail noting that Claimant reported he was unable to handle stressful situations, could not stand for longer periods, was unable to remember specific instructions, and had pain in his hands with grasping and holding tools. However, Claimant also testified that he could feed and water his animals, had no problems with his personal care, could prepare simple meals, helped with chores, including dishes, laundry, and mowing the lawn on a riding lawn mower. Claimant could drive, pay bills, and count change. He spent time with his son and grandchildren, talked to his parents on the phone, and went out to eat at least once a week. Anxiety limited his trips to see his

friends. Claimant believed his impairments affected his abilities when lifting, bending, standing, walking, sitting, hearing, stair climbing, memory, completing tasks, concentration, understanding, following instructions, and using his hands. (Tr. 18, 20, 38, 203-10, 229-36).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." *White v. Barnhart*, 287 F.3d 903, 906 n.2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence contained in the case record. *Id*. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ's decision demonstrates that he considered the probative evidence of record and determined Claimant had the RFC

to perform medium work with postural and mental limitations, including occasionally climbing ramps, stairs, ladders, ropes, and scaffolds, occasionally stooping, kneeling, crouching, and crawling, and frequently balancing. Claimant's mental limitations, although not challenged by Claimant, included performing simple and some complex tasks, occasional interaction with supervisors, co-workers, and the general public, responding appropriately to changes in a routine work setting, and time off task being accommodated by normal work breaks. (Tr. 17). The Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Casias*, 933 F.2d at 800; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). This Court finds no error with the ALJ's RFC assessment, as "substantial evidence supports the ALJ's decision and the correct legal standards were applied." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and

Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 31st day of July, 2020.

*[signature]*

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE